# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| JASON CRUMRINE, Individually and On Behalf of All Others Similarly Situated, | Case No. |
| Plaintiff, | **CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** |
| v. | |
| VIVINT SOLAR, INC., DAVID BYWATER, and DANA RUSSELL, | **JURY TRIAL DEMANDED** |
| Defendants. | |

Plaintiff Jason Crumrine ("Plaintiff"), individually and on behalf of all others similarly situated, by and through her attorneys, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, among other things, her counsel's investigation, which includes without limitation: (a) review and analysis of regulatory filings made by Vivint Solar, Inc. ("Vivint" or the "Company") with the United States ("U.S.") Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and media reports issued by and disseminated by Vivint; and (c) review of other publicly available information concerning Vivint.

## NATURE OF THE ACTION AND OVERVIEW

1. This is a class action on behalf of persons and entities that purchased or otherwise acquired Vivint securities between March 5, 2019 and September 26, 2019, inclusive (the "Class Period"). Plaintiff pursues claims against the Defendants under the Securities Exchange Act of 1934 (the "Exchange Act").

2. Vivint offers solar energy systems to residential customers through a direct-to-home sales model.

3. On September 27, 2019, Marcus Aurelius Value published a report alleging that "28 undisclosed lawsuits . . . specifically allege Vivint forged customer contracts or otherwise engaged in fraud or deception."

4. On this news, the Company's share price fell $0.14 per share, or over 2%, to close at $6.55 per share on September 27, 2019, on unusually high trading volume.

5. Throughout the Class Period, Defendants made materially false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants failed to disclose to investors: (1) that the Company engaged in fraudulent practices, including forging customer contracts; (2) that, as a result, the Company's reported sales and megawatts installed were overstated; (3) that these practices were reasonably likely to lead to regulatory scrutiny: (4) that, as a result, the

Company's earnings would be materially and adversely impacted; and (5) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects, were materially misleading and/or lacked a reasonable basis.

6. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

7. The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

8. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

9. Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)). Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this Judicial District. Many of the acts charged herein, including the dissemination of materially false and/or misleading information, occurred in substantial part in this Judicial District.

10. In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mail, interstate telephone communications, and the facilities of a national securities exchange.

## PARTIES

11. Plaintiff Jason Crumrine, as set forth in the accompanying certification, incorporated by reference herein, purchased Vivint securities during the Class Period, and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

12. Defendant Vivint is incorporated under the laws of Delaware with its principal executive offices located in Lehi, Utah. Vivint's common stock trades on the New York Stock Exchange ("NYSE") under the symbol "VSLR."

13. Defendant David Bywater ("Bywater") was, at all relevant times, the Chief Executive Officer ("CEO") and a Director of the Company.

14. Defendant Dana Russell ("Russell") was, at all relevant times, the Chief Financial Officer ("CFO") of the Company.

15. Defendants Bywater and Russell (collectively the "Individual Defendants"), because of their positions with the Company, possessed the power and authority to control the contents of the Company's reports to the SEC, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, *i.e.*, the market. The Individual Defendants were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of their positions and access to material non-public information available to them, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading. The Individual Defendants are liable for the false statements pleaded herein.

## SUBSTANTIVE ALLEGATIONS

### Background

16. Vivint offers solar energy systems to residential customers through a direct-to-home sales model.

### Materially False and Misleading Statements Issued During the Class Period

17. The Class Period begins on March 5, 2019. On that day, the Company announced its fourth quarter and full year 2018 financial results, stating in a press release:

**Fourth Quarter 2018 Operating Highlights**

Key operating and development highlights include:

- MW Booked of approximately 63 MWs for the quarter.

- MW Installed of approximately 54 MWs for the quarter. Total cumulative MWs installed were approximately 1,061 MWs.

- Installations were 7,730 for the quarter. Cumulative installations were 154,598.

- Estimated Gross Retained Value increased by approximately $62 million during the quarter to approximately $2.0 billion. Estimated Gross Retained Value per Watt at quarter end was $2.06.

- Cost per Watt was $3.12, a decrease from $3.21 in the third quarter of 2018 and an increase from $2.95 in the fourth quarter of 2017.

\* \* \*

For the first quarter of 2019, Vivint Solar expects:

- MW Installed: 43 - 45 MWs

- Cost per Watt: $3.45 - $3.52

For the full year 2019, Vivint Solar expects 15% growth for MWs Installed.

\* \* \*

**Glossary of Definitions**

*"Installations"* represents the number of solar energy systems installed on customers' premises.

*"MWs or megawatts"* represents the DC nameplate megawatt production capacity.

*"MW Booked"* represents the aggregate megawatt nameplate capacity of solar energy systems that were permitted during the period net of cancellations in the period.

*"MW Installed"* represents the aggregate megawatt nameplate capacity of solar energy systems for which panels, inverters, and mounting and racking hardware have been installed on customer premises in the period.

18. The same day, the Company filed its annual report on Form 10-K for the period ended December 31, 2018 (the "2018 10-K"), affirming the previously reported financial results. Moreover, Defendants Bywater and Russell signed certifications pursuant to Sarbanes-Oxley Act of 2002 ("SOX") attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting, and the disclosure of all fraud in the 2018 10-K. The 2018 10-K also stated that the Company's internal control over financial reporting was effective as of December 31, 2018.

19. Under "Risk Factors" in the 2018 10-K, the Company stated that restrictions on direct-selling could adversely impact Vivint's financial condition, stating in relevant part:

> ***The majority of our business is conducted using one channel, direct-selling.***
>
> Historically, our primary sales channel has been a direct sales model. We also sell to customers through our inside sales team but continue to find greatest success using our direct sales channel. In addition, we have entered into sales dealer agreements with Vivint and others. We may sell through additional distribution channels in the future, including homebuilders and retailers. We compete against companies with experience selling solar energy systems to customers through a number of distribution channels, including homebuilders, home improvement stores, large construction, electrical and roofing companies, the internet and other third parties and companies that access customers through relationships with third parties in addition to other direct-selling companies. Our less diversified distribution channels may place us at a disadvantage with consumers who prefer to purchase products through these other distribution channels. If customers demonstrate a preference for other distribution channels, we may need to reduce our direct-selling efforts. We are also vulnerable to changes in laws related to direct sales and marketing that could impose additional limitations on unsolicited residential sales calls and may impose additional restrictions such as adjustments to our marketing materials and direct-selling processes, and new training for personnel. If additional laws affecting direct sales and marketing are passed in the markets in which we operate, it would take time to train our sales force to comply with such laws, and we may be exposed to fines or other penalties for violations of such laws. If we fail to compete effectively through our direct-selling efforts or are not successful in developing other sales channels, our financial condition, results of operations and growth prospects could be adversely affected.

20. Moreover, the Company stated in the 2018 10-K that it relied on an effective sales force, stating in relevant part:

> ***We are highly dependent on our ability to attract, train and retain an effective sales force.***

> The success of our direct-selling channel efforts depends upon the recruitment, retention and motivation of a large number of sales personnel to compensate for a high turnover rate among sales personnel, which is a common characteristic of a direct-selling business. In order to grow our business, we need to recruit, train and retain sales personnel on a continuing basis. Sales personnel are attracted to direct-selling by competitive earnings opportunities, and direct-sellers typically compete for sales personnel by providing a more competitive earnings opportunity than that offered by the competition. We believe competitors devote substantial effort to determining the effectiveness of such incentives so that they can invest in incentives that are the most cost effective or produce the best return on investment. We have historically compensated our sales personnel on a commission basis, based on the size of the solar energy systems they sell and recently have begun compensating based on system size, contract rate and the expected number of hours the rooftop will be exposed to full sunlight. Some sales personnel may prefer a compensation structure that also includes a salary and equity incentive component. There is significant competition for sales talent in our industry, and from time to time we may need to adjust our compensation model to include such components. These adjustments have caused our customer acquisition costs to increase and could otherwise adversely impact our operating results and financial performance. . . .

21.     On May 9, 2019, the Company announced its first quarter 2018 financial results in a press release, stating in relevant part:

> **First Quarter 2019 Operating Highlights**
>
> Key operating and development highlights include:
>
> - MW Installed of approximately 46 MWs for the quarter. Total cumulative MWs installed were approximately 1,107 MWs.
>
> - Installations were 6,514 for the quarter. Cumulative installations were 161,112.
>
> - Estimated Gross Retained Value increased by approximately $54 million during the quarter and is approximately $2.1 billion. Estimated Gross Retained Value per Watt at quarter end was $2.04.
>
> - Cost per Watt was $3.46, an increase from $3.18 in the fourth quarter of 2018 and an increase from $3.22 in the first quarter of 2018.
>
> - Margin created was $45 million, a 29% increase from the first quarter of 2018. Unlevered NPV per Watt was $0.99.
>
> * * *
>
> For the second quarter of 2019, Vivint Solar expects:

- MW Installed: 52 - 55 MWs

- Cost per Watt: $3.32 - $3.40

22. On August 8, 2019, the Company announced its second quarter 2019 financial results in a press release, stating in relevant part:

**Second Quarter 2019 Operating Highlights**

Key operating and development highlights include:

- MW Installed of approximately 56 MWs for the quarter. Total cumulative MWs installed were approximately 1,163 MWs.

- Installations were 8,163 for the quarter. Cumulative installations were 169,275.

- Estimated Gross Retained Value increased by approximately $68 million during the quarter to approximately $2.1 billion. Estimated Gross Retained Value per Watt at quarter end was $2.02.

- Cost per Watt was $3.56, an increase from $3.46 in the first quarter of 2019 and an increase from $3.23 in the second quarter of 2018.

- Margin created was $49 million, a 21% increase from the second quarter of 2018. Unlevered NPV per Watt was $0.88.

23. The above statements identified in ¶¶ 17-22 were materially false and/or misleading, and failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants failed to disclose to investors: (1) that the Company engaged in fraudulent practices, including forging customer contracts; (2) that, as a result, the Company's reported sales and megawatts installed were overstated; (3) that these practices were reasonably likely to lead to regulatory scrutiny: (4) that, as a result, the Company's earnings would be materially and adversely impacted; and (5) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects, were materially misleading and/or lacked a reasonable basis.

**Disclosures at the End of the Class Period**

24. On September 27, 2019, Marcus Aurelius Value published a report entitled "VSLR: Fiddler on the Roof," alleging that "28 undisclosed lawsuits . . . specifically allege

Vivint forged customer contracts or otherwise engaged in fraud or deception." The report stated, in relevant part:

> Various victims of this alleged fraud, including elderly, handicapped, and non-English speaking families, state that Vivint resorted to outright fraud and forgery to close deals. Lawsuits allege that "***Vivint, as a pattern and practice, regularly forges signatures***" on customer contracts in states including California (which accounts for approximately 34% of Vivint's business). Lawsuits identify senior sales employees currently at the company as being involved in the alleged fraud and "*It is a corporate policy and culture at Vivint Solar to look the other way and dismiss these numerous complaints and to overtly or tacitly encourage their sales agents to hide important sales details from consumers, forge and falsify authorization documents…Vivint promotes its employees for this conduct*."
>
> * * *
>
> We found 28 undisclosed lawsuits that specifically allege Vivint forged customer contracts or otherwise engaged in fraud or deception (a detailed index is provided in the appendix). Not only do lawsuits argue that Vivint "regularly forges signatures" on bogus solar contracts but that, despite being "routinely placed on notice about its sales agents committing forgery, fraud, and impermissible credit pulls", Vivint continues to prey on consumers and even "promotes its employees for this conduct"

25. On this news, the Company's share price fell $0.14 per share, or over 2%, to close at $6.55 per share on September 27, 2019, on unusually high trading volume.

## CLASS ACTION ALLEGATIONS

26. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class, consisting of all persons and entities that purchased or otherwise acquired Vivint securities between March 5, 2019 and September 26, 2019, inclusive, and who were damaged thereby (the "Class"). Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

27. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Vivint's common shares actively traded on the NYSE. While the exact number of Class members is unknown to Plaintiff at this time and can

only be ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds or thousands of members in the proposed Class. Millions of Vivint common stock were traded publicly during the Class Period on the NYSE. Record owners and other members of the Class may be identified from records maintained by Vivint or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

28. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

29. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

30. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a) whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b) whether statements made by Defendants to the investing public during the Class Period omitted and/or misrepresented material facts about the business, operations, and prospects of Vivint; and

(c) to what extent the members of the Class have sustained damages and the proper measure of damages.

31. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## **UNDISCLOSED ADVERSE FACTS**

32. The market for Vivint's securities was open, well-developed and efficient at all relevant times. As a result of these materially false and/or misleading statements, and/or failures to disclose, Vivint's securities traded at artificially inflated prices during the Class Period. Plaintiff and other members of the Class purchased or otherwise acquired Vivint's securities relying upon the integrity of the market price of the Company's securities and market information relating to Vivint, and have been damaged thereby.

33. During the Class Period, Defendants materially misled the investing public, thereby inflating the price of Vivint's securities, by publicly issuing false and/or misleading statements and/or omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and/or misleading. The statements and omissions were materially false and/or misleading because they failed to disclose material adverse information and/or misrepresented the truth about Vivint's business, operations, and prospects as alleged herein.

34. At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class. As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Vivint's financial well-being and prospects. These material misstatements and/or omissions had the cause and effect of creating in the market an unrealistically positive assessment of the Company and its financial well-being and prospects, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times. Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein when the truth was revealed.

## LOSS CAUSATION

35. Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by Plaintiff and the Class.

36. During the Class Period, Plaintiff and the Class purchased Vivint's securities at artificially inflated prices and were damaged thereby. The price of the Company's securities significantly declined when the misrepresentations made to the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors' losses.

## SCIENTER ALLEGATIONS

37. As alleged herein, Defendants acted with scienter since Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and/or misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws. As set forth elsewhere herein in detail, the Individual Defendants, by virtue of their receipt of information reflecting the true facts regarding Vivint, their control over, and/or receipt and/or modification of Vivint's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning Vivint, participated in the fraudulent scheme alleged herein.

## APPLICABILITY OF PRESUMPTION OF RELIANCE
## (FRAUD-ON-THE-MARKET DOCTRINE)

38. The market for Vivint's securities was open, well-developed and efficient at all relevant times. As a result of the materially false and/or misleading statements and/or failures to disclose, Vivint's securities traded at artificially inflated prices during the Class Period. On August 7, 2019, the Company's share price closed at a Class Period high of $9.45 per share. Plaintiff and other members of the Class purchased or otherwise acquired the Company's securities relying upon the integrity of the market price of Vivint's securities and market

information relating to Vivint, and have been damaged thereby.

39. During the Class Period, the artificial inflation of Vivint's shares was caused by the material misrepresentations and/or omissions particularized in this Complaint causing the damages sustained by Plaintiff and other members of the Class. As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Vivint's business, prospects, and operations. These material misstatements and/or omissions created an unrealistically positive assessment of Vivint and its business, operations, and prospects, thus causing the price of the Company's securities to be artificially inflated at all relevant times, and when disclosed, negatively affected the value of the Company shares. Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at such artificially inflated prices, and each of them has been damaged as a result.

40. At all relevant times, the market for Vivint's securities was an efficient market for the following reasons, among others:

(a) Vivint shares met the requirements for listing, and was listed and actively traded on the NYSE, a highly efficient and automated market;

(b) As a regulated issuer, Vivint filed periodic public reports with the SEC and/or the NYSE;

(c) Vivint regularly communicated with public investors via established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and/or

(d) Vivint was followed by securities analysts employed by brokerage firms who wrote reports about the Company, and these reports were distributed to the sales force and certain customers of their respective brokerage firms. Each of these reports was publicly available and entered the public marketplace.

41. As a result of the foregoing, the market for Vivint's securities promptly digested current information regarding Vivint from all publicly available sources and reflected such information in Vivint's share price. Under these circumstances, all purchasers of Vivint's securities during the Class Period suffered similar injury through their purchase of Vivint's securities at artificially inflated prices and a presumption of reliance applies.

42. A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the Class's claims are, in large part, grounded on Defendants' material misstatements and/or omissions. Because this action involves Defendants' failure to disclose material adverse information regarding the Company's business operations and financial prospects—information that Defendants were obligated to disclose—positive proof of reliance is not a prerequisite to recovery. All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in making investment decisions. Given the importance of the Class Period material misstatements and omissions set forth above, that requirement is satisfied here.

## NO SAFE HARBOR

43. The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions. In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or

misleading, and/or the forward-looking statement was authorized or approved by an executive officer of Vivint who knew that the statement was false when made.

## FIRST CLAIM
### Violation of Section 10(b) of The Exchange Act and Rule 10b-5 Promulgated Thereunder
### Against All Defendants

44. Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

45. During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase Vivint's securities at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each defendant, took the actions set forth herein.

46. Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Vivint's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5. All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

47. Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about Vivint's financial well-being and prospects, as specified herein.

48. Defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Vivint's value and

performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and/or omitting to state material facts necessary in order to make the statements made about Vivint and its business operations and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities during the Class Period.

49.   Each of the Individual Defendants' primary liability and controlling person liability arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of their responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of, and had access to, other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew and/or recklessly disregarded was materially false and misleading.

50.   Defendants had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Vivint's financial well-being and prospects from the investing public and supporting the artificially inflated price of its securities. As demonstrated by Defendants' overstatements and/or misstatements of the Company's business, operations, financial well-being, and prospects throughout the Class Period, Defendants, if they did not have

actual knowledge of the misrepresentations and/or omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

51. As a result of the dissemination of the materially false and/or misleading information and/or failure to disclose material facts, as set forth above, the market price of Vivint's securities was artificially inflated during the Class Period. In ignorance of the fact that market prices of the Company's securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the securities trades, and/or in the absence of material adverse information that was known to or recklessly disregarded by Defendants, but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired Vivint's securities during the Class Period at artificially high prices and were damaged thereby.

52. At the time of said misrepresentations and/or omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true. Had Plaintiff and the other members of the Class and the marketplace known the truth regarding the problems that Vivint was experiencing, which were not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their Vivint securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

53. By virtue of the foregoing, Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

54. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

## SECOND CLAIM
### Violation of Section 20(a) of The Exchange Act
### Against the Individual Defendants

55. Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

56. Individual Defendants acted as controlling persons of Vivint within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions and their ownership and contractual rights, participation in, and/or awareness of the Company's operations and intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading. Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings, and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

57. In particular, Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

58. As set forth above, Vivint and Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of their position as controlling persons, Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

(a) Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

(b) Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c) Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d) Such other and further relief as the Court may deem just and proper.

**JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury.

Dated: October 11, 2019

**GLANCY PRONGAY & MURRAY LLP**

By: *s/ Lesley F. Portnoy*
Lesley F. Portnoy (LP-1941)
230 Park Ave., Suite 530
New York, New York 10168
Telephone: (212) 682-5340
Facsimile: (212) 884-0988
Email: lportnoy@glancylaw.com

-and-

Lionel Z. Glancy
Robert V. Prongay
Charles H. Linehan
Pavithra Rajesh
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
Email: info@glancylaw.com

*Attorneys for Plaintiff Jason Crumrine*